NO FEE/NO IFP        #4        15 JF
                               (Related 3:18-cv-230)

IN THE UNITED STATES DISTRICT COURT FOR THE W. DIST OF PA.

LINDELL TATE, plaintiff

V.

LINDSAY, Lieutenant
          defendant et al

CIVIL ACTION 3:20-CV-86

FILED
MAY 04 2020
CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

# CIVIL COMPLAINT

## 1. Jurisdiction & Venue

This court has jurisdiction to review this Action under 42 USCS §§ 1983, 1992, 1997(a) 1997(c), and retains appropriate venue, being of the 'western district' of Pennsylvania where the issue raised in this Action did occur.

## 2. The Plaintiff

The plaintiff Mr. Lindell Tate is currently housed as an inmate in S.C.I. Somerset, where the issue raised in this action did occur.

## 3. The Defendants

1. Defendant Lindsay is currently a Lieutenant at S.C.I.

1.

Somerset. His legal obligation as such is to maintain institutional security under color of state law.

2. Defendant Faultz is currently a C.O.I, at S.C.I. Somerset. His legal obligation as such is to maintain institutional security under color of state law.

### 4. The Facts

1. On the date of 9-28-2019 while housed in the RHU B pod cell 8, the plaintiff notified C.O Faultz during the serving of breakfast trays at approximately 6:30 am, that he and his cellmate were not getting along and had been having some very heated exchanges. The plaintiff then asked to be removed from the seemingly escalating situation to another cell, being as though two other cells on the pod had an open bed, cell 17 and 20. C.O Faultz said he would work on the movement of the plaintiff.

2. C.O Faultz was stopped and spoken too at length several times by the plaintiff about his being removed from the toxic situation. In frustration with the circumstances and the repeated asking of the plaintiff, C.O Faultz stated that it was not up to him on who moves where, but up to the Lieutenant working.

3. The plaintiff hit the emergency call button in his cell and spoke with lieutenant Lindsay directly. I told

2.

lieutenant Lindsay that my cellmate and I had nearly come to blows a few times and could no longer tolerate one another. My cellmate screamed into the intercom that "if one of us ain't moved, something was going to happen to one of us," several times as C.O Faulte stood at the door shaking his head. The plaintiff made the exact same threat as his cellmate. Lieutenant Lindsay told the plaintiff and his cellmate that if both were not willing to move then neither could. The plaintiff's cellmate refused to move, so the plaintiff was forced to stay with him. This was approximately 11:00 am.

4. At or approximately 2:00 pm, the plaintiff stood at the door of his cell watching TV when his cellmate attacked him from behind choking him to a state of unconscinceness, busting his lip in the process. The plaintiff is unawear how long he was unconscince for, but he was discovered while an officer was doing a round. The plaintiff was still unawear of what was going on around him, blamed the offices for his condition. His hands and feet were tied behind his back.

5. The plaintiff was then untied and taken to medical where he under-went examination. Photos of the plaintiff were taken, before the plaintiff was placed in A pod 18 cell. Another unoccupied cell where he could have been placed before being assaulted. The plaintiff's cellmate was sentenced to 90 days in the RHU for his assault on

3.

him

6. Defendant, Faulte and Lindsay were both well awear of the danger both inmates posed to oneanother, after both inmates expressed there extrem dislike to being housed in the same cell together. Both inmates expressed profound intent to excirsize harm to oneanother if they were not separated. Both defendant Faulte and Lindsay were pleaded with by the plaintiff and his cellmate for their separation for nearly 8 hours, while several other beds were avilible, leaving the plaintiff and his cellmate to fight with oneanother without so much as pulling them out of the cell separartely to speak with them in hopes of deescalating the problem between them.

7. In the very eary stage of the grievance process, the plaintiff asked the C.o.C to hold all camera footage in order to aviod spoilaction.

8. Upon information and belief, an inmate had been beat to death in this R.H.U, A pod cell 18, the exact same cell the plaintiff was moved too after he was assaulted. This happen in 2018. This particular inmate had been dead in the cell for over 2 days before he was discovered, only after his cellmate who killed him notified officials to come and get the body. There is a history of extrem safety issues, and deliberate

4.

indifference here in S.C.I. Somerset's RHU. So much that, Captain Minor was sent here to "clean this RHU up". This was told directly to the plaintiff by Captain Minor, in Captain Minor's attempt to get the plaintiff to sign off on his grievance, stating that his assault was not a grievable offense. Officials continue to be deliberately indifferent because nothing becomes of it.

5. Legal Claim

1. While performing under color of state law, both defendant Faultz and Lindsay violated the plaintiff's 8th Amendment rights by failing to protect him from serious harm (or risk of harm) that they were made aware of.

2. In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2811 (1994), acknowledging that prisoners have the right to be free from cruel and unusual punishment (id., 511 U.S. at 832) the Supreme court discussed the appropriate standard for determining whether the Eighth Amendment is violated by inmate-on-inmate violence. The court rejected the proposal of an objective standard under which a prison official who was unaware of a substantial risk to be held liable for failing to protect an inmate from harm, would nevertheless be held liable under the Eighth Amendment, even if the risk was so

5.

obvious a reasonable prison official would have been aware of it. The court preferred the subjective approach: officials must actually be aware of a risk to be held liable for failing to prevent the risk.

3. Both defendant Lindsay and Faultz passed the requirement of the knowledge of risk of harm standard set by the Supreme court in a failure to protect case when the plaintiff and his cellmate made the defendants aware several times for nearly 8 hours that they would attempt to seriously harm one-another if not separated. knowledge of risk of harm was thus established of the (2) part test.

4. Along with the objective requirement of a sufficiently serious harm (or risk of harm), to complete an Eighth Amendment claim, evidence maybe produced that demonstrates either (1) officials intent to harm the prisoner(s) or (2) officials knowledge of a risk of harm, which they failed to act to prevent.

5. Both defendant Faultz and Lindsay failed to prevent the harm/assault of the plaintiff in spite of their knowledge that such harm would befall him if not separated from his cellmate. failure to prevent harm of the (2) part test is thus satisfied.

6. The plaintiff suffered a serious bodily injury, when choked to the state of unconsciousness and having his lip bust and swelled.

7. "The term 'serious bodily injury' means bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

6. Prayer for Relief

Wherefore, plaintiff respectfully prays that this court enter judgment granting plaintiff.

1. Personal Injury in the amount of $25,000.00 against each defendant.

2. Mental and Emotional damages in the amount of $100,000.00 against each defendant.

3. Punitive damages in the amount of $250,000.00 against each defendant.

7.

CERTIFICATE OF SERVICE

I, Lindell Tate, plaintiff, hereby affirm that the foregoing facts are free of perjury and falsification under 18 Pa C.S. 4904.

The preceding documents shall be served upon the following:

United States District Court
For the W. Dist. of PA
Penn Traffic Building
Johnstown, Pa 15901

Print: Lindell Tate
Sign: [signature]
Date: 3-17-20